Argued and submitted March 31, 2010, on appeal, dissolution judgment modified
to award wife indefinite spousal support of $1,100 and otherwise affirmed;
affirmed on cross-appeal February 16, 2011

In the Matter of the Marriage of

Paul Jeffrey FINEAR,
*Petitioner-Respondent
Cross-Appellant,*

*and*

Laurie Lynnette FINEAR,
*Respondent-Appellant
Cross-Respondent.*

Jackson County Circuit Court
060084D3; A138783

247 P3d 1238

Laura Graser argued the cause and filed the briefs for appellant - cross-respondent.

Craig M. Cowley argued the cause for respondent - cross-appellant. With him on the brief was Gevurtz Menashe Larson & Howe PC.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

In this dissolution of marriage case, the primary dispute on appeal concerns the division of the marital property, specifically the division of assets that husband inherited during the marriage. Wife contends that the trial court erred in determining that husband should retain the entire inheritance. Wife also assigns error to the duration and amount of spousal support and to the trial court's failure to award her more attorney fees. On cross-appeal, husband assigns error to the trial court's award of spousal and child support. On *de novo* review, ORS 19.415(3) (2007),[1] we modify the spousal support award, and otherwise affirm. We write only to address spousal support and the property division.

The parties were married in 1985 and have four children, two of whom were minors at the time of trial. The parties separated in January 2006, after 21 years of marriage, when both were age 46 and in good health.

During the first 14 years of the marriage, husband worked as a finish carpenter. In 1999, the last year during which husband worked for remuneration, he earned approximately $50,000. In that year, husband received a large inheritance from an uncle, and he chose after that time to no longer work in carpentry but to purchase a farm and focus, instead, on managing his inheritance and the farm. The trial court found that if husband were to return to work as a finish carpenter, he could earn $5,000 per month.

Wife was primarily responsible for homemaking during the marriage, including child care, cooking, and cleaning. She home-schooled the parties' four children until the youngest, who was age 12 at the time of trial, was in the fourth grade. Wife has had some part-time employment for minimum wage, but otherwise has not worked outside the home. Currently, wife works about four hours per week coaching gymnastics. The trial court found that if wife were to work full time, she could earn $1,650 per month.

---

[1] ORS 19.415 was amended by Senate Bill (SB) 262 (2009). Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

The marital property consists primarily of assets derived from husband's inheritance. Husband's uncle, who died in California in 1998, had left his entire estate to his parents and then to husband's father. The named devisees predeceased the uncle and, by operation of California law, his estate passed by intestacy to husband and his two siblings. Husband's inheritance included real property in California, $90,000 in savings bonds, an interest in a joint venture, personal property, a brokerage account, and $600,000 in cash. Husband held all the inherited property in his name and placed it in a trust. Under the terms of the trust, upon husband's death, wife was to receive the income from the trust; upon her death, the assets were to go to the children. Husband and wife rarely discussed the inheritance or the trust. Wife was aware that the property belonged to husband and that she had no access to the funds. In total, the value of the inherited property was $1,269,698.60.

Without wife's knowledge or involvement, husband used inheritance/trust funds of $519,230 to purchase 37 acres and a homestead on Lomas Road in Jacksonville, Oregon. In 1999, the parties moved from California to Oregon, and the property, known as the Lomas Road property, became the parties' residence. Husband obtained and drew on a line of credit of $272,665 to improve the property, and he used trust income and principal to pay down the debt. When the parties separated in 2006, the outstanding encumbrance on the Lomas Road property was $84,929, and the property had increased in value to $1,425,000. The trial court found that the Lomas Road property had appreciated in value by approximately $905,770 since husband acquired it in 1999. Husband also used inheritance/trust funds to purchase real property in California with his siblings and to purchase a home on Perrydale Avenue in Medford, Oregon.

The parties lived modestly during the marriage. After the move to Oregon, they spent their time at the Lomas Road property, and husband worked and managed a farm on the property full time. The farm operated at a loss, and husband used inheritance/trust funds for improvements and household expenses. His monthly trust income, less farm losses, was $1,729.

It is not disputed that husband tightly managed the money, and husband does not disagree with wife's characterization of him as controlling, especially with regard to financial matters. With the exception of a monthly allowance of $500 for wife's personal needs, such as clothing for herself and the children, makeup, haircuts, and gas, wife did not have access to any family money, nor did husband share any financial information with her. Wife testified that she never asked husband about finances, because he would have considered that to be unacceptable. When wife worked part time, husband would reduce her allowance accordingly. During the last four years of the marriage, husband did all of the grocery shopping. He also gradually prevented wife from having physical access to various areas of the property.

In dividing the real property, the court determined that, because husband's inheritance had been acquired during the marriage, it was presumed to be a marital asset; however, the court found that husband had kept his inheritance property separate and determined that husband had rebutted the presumption of equal contribution with respect to the inheritance, as well as with respect to the assets that husband had acquired with inheritance funds. As for the Lomas Road property, the court determined that it had been purchased entirely with inheritance/trust funds and that husband had rebutted the presumption of equal contribution as to the acquisition of that property. The court found, however, that wife had contributed equally to the appreciation in the value of the Lomas Road property through her assistance with improvements on the property and her work as principal homemaker and primary caregiver for the parties' children. The court awarded the Lomas Road property to husband, but equally divided the appreciation of that asset, less the remaining encumbrance, which the court determined was a marital debt. In distributing the value of the appreciation, the court awarded to wife the Perrydale Avenue residence (valued at $260,000), free of any encumbrance, and also awarded to wife an equalizing judgment of $176,487.50. The trial court awarded husband the remaining assets. In sum, the trial court awarded husband assets having a value of $1,433,589.33 and awarded wife property worth $418,500, or approximately 23 percent of the marital property.

The trial court gave wife custody of the parties' minor children, with parenting time for husband, and awarded wife child support of $662 per month for both children. The court awarded wife monthly spousal support of $1,100 for 10 years, and $850 per month for an additional six years. It awarded wife a total of $4,000 in attorney fees.

On appeal, wife contends in her first assignment of error that the trial court erred in determining that husband had overcome the presumption of equal contribution with respect to the inherited assets and all of the property that husband had acquired with inheritance/trust funds. In her second assignment of error, wife contends that the entire inheritance became a joint asset through commingling and should have been divided equally. In her third assignment of error, wife contends that, even in the absence of commingling, it is just and proper to award wife an equal share of the marital property, including the inheritance/trust assets, which would result in an equalizing judgment to wife of $666,044.67, or an additional award of $489,500. Wife's fourth assignment of error focuses on the award of attorney fees, and, in her fifth assignment of error, wife contends that the trial court awarded her an inadequate amount and duration of spousal support. On cross-appeal, husband contends that both the spousal and child support awards are excessive.[2]

We first address the award of spousal support. Wife requested $1,200 in indefinite maintenance support. In awarding support of $1,100 for 10 years and $850 for six years, the trial court did not explain why it awarded less support than wife requested. It did not explain why it limited the duration of support to 16 years, or why it stepped down support after 10 years. Wife contends that the award of support should be indefinite and requests an increase to $1,200. Husband contends in his cross-appeal that, in light of the parties' modest standard of living during the marriage and in light of the property division, which awards wife a significant portion

---

[2] We note that, at trial, husband stipulated to child support based on the guidelines. The only dispute on appeal concerns the income level on which to base the support.

of the value of assets on which husband had been drawing to support the family, spousal support should be reduced.

■     Wife did not hold regular employment outside the home during the marriage, primarily because of the parties' decision that she would be a homemaker and would home-school the children. She has no plans to further her education or training. The minimum wage income that wife is capable of earning is not sufficient to allow her to be self-supporting. We are satisfied that, given the length of the marriage, wife's lengthy absence from the labor market while raising and home-schooling the parties' children, her age and lack of meaningful work experience and skills, and the disparity in the parties' incomes and earning capacities, it is just and equitable that wife be awarded indefinite maintenance support. ORS 107.105(1)(d); *Rudder and Rudder*, 230 Or App 437, 464, 217 P3d 183, *rev den*, 347 Or 365 (2009) (discussing the rationale for indefinite support).

We find, further, that the support amount of $1,100 is appropriate in light of husband's earning capacity and his expenses, including the mortgage on the Perrydale Avenue property. That amount, together with wife's full-time employment, will cover wife's reasonable household expenses. We are also persuaded, however, that in the absence of evidence that wife's earning capacity will increase over time, it is not appropriate to step down spousal support. *See Roppe and Roppe*, 186 Or App 632, 637, 64 P3d 1145 (2003) (discussing the rationale for stepped-down support). Thus, the dissolution judgment should be modified to reflect $1,100 in indefinite monthly spousal support.

We move on to consideration of the property division and wife's contention that the inheritance is a marital asset that must be equally divided. Husband concedes that his inheritance is a marital asset because it was acquired during the marriage and that, like any other gift, it is subject to a rebuttable presumption of equal contribution. ORS 107.105(1)(f);[3] *Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100

---

[3] Under ORS 107.105(1)(f), the court may provide in a judgment of dissolution "[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution

(2004). He contends, however, as the trial court found, that the presumption has been rebutted by evidence that wife did not make any contribution to the acquisition of the inheritance.

■ ■  Generally, the presumption of equal contribution may be rebutted by evidence that an asset was acquired "free of any contributions from the other spouse." *Kunze*, 337 Or at 135. In the context of an inheritance, "contribution" means that the other spouse influenced the acquisition of the inherited property. *Olson and Olson*, 218 Or App 1, 9, 178 P3d 272 (2008) ("In order to show that a spouse contributed to an acquisition of inherited property, the contribution must have influenced the inheritance."). We agree with the trial court and with husband that, in this case, the presumption of equal contribution has been rebutted with respect to the assets that husband inherited during the marriage, as there is no evidence that wife made any contribution or had any influence over the acquisition of the inheritance. *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982) (the presumption of equal contribution may be overcome by a finding that the property was acquired by one spouse by gift or inheritance, uninfluenced by the other spouse). In fact, in this case, neither party influenced the inheritance; it came to husband not because of the testator's donative intent, but by operation of law.

Wife contends that when, as here, neither spouse has contributed to the acquisition of an inheritance, the parties' contributions are, in effect, equal, and the presumption is not rebutted. However, wife's underlying assumption that neither spouse contributed to the inheritance is mistaken. Even in the absence of evidence of husband's influence or of donative intent on the part of the testator, husband "contributed" to the acquisition of his inheritance by virtue of his legal relationship to his uncle, which was the source of his right to inherit the property. *See Nightwine and Nightwine*, 129 Or App 358, 362, 879 P2d 877 (1994). Wife, in turn, made no contribution. Thus, the presumption of equal contribution

of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

has been rebutted, and the inheritance must be treated as husband's separate asset in the division of marital property.

█  We next address the treatment of properties acquired during the marriage with inheritance/trust funds: the Lomas Road property, the Perrydale Avenue house, and husband's interest in a joint venture with his siblings. Once again, because the properties were acquired during the marriage, they are marital assets to which the presumption of equal contribution applies. There is no dispute, however, that the assets were acquired with husband's separate funds, without contribution from wife and, in fact, without wife's knowledge. Accordingly, we conclude, as did the trial court, that the presumption of equal contribution has been rebutted with respect to those assets.

██  As the trial court reasoned, however, appreciation of a separately held asset is also a marital asset, subject to a presumption of equal contribution. *Massee and Massee*, 328 Or 195, 206, 970 P2d 1203 (1999). We agree with the trial court that the appreciation of the Lomas Road property over the course of the marriage is a marital asset and that the presumption of equal contribution as to that appreciation has not been rebutted.[4] As the trial court found, the parties lived on that property and wife contributed to the marital partnership through her help in maintaining the property, and her work as a homemaker and primary caregiver for and educator of the parties' children. *See Olson*, 218 Or App at 11. Therefore, we conclude that the trial court correctly determined that the appreciation of the Lomas Road property should be divided equally between the parties. Husband does not argue to the contrary on appeal.

█  That does not end our inquiry, however. We still must determine if it is just and proper to award wife an interest in husband's separately held inheritance/trust property. The trial court's ultimate determination of what property division is just and proper in all the circumstances is a matter of discretion that this court will not disturb in the absence of

---

[4] Other than the Lomas Road property, the parties do not separately address appreciation attributable to the properties acquired during the marriage with inheritance/trust funds.

a misapplication of the statutory and equitable considerations required by ORS 107.105(1)(f). *Kunze*, 337 Or at 136.

█ █ In this case, wife contends that husband's commingling of the inheritance/trust assets into the marital partnership justifies an equal division of those assets. In *Kunze*, the court explained that commingling may affect the proper division of separately held assets. For example, separately acquired assets may be so commingled with the joint assets of the marriage that the court is precluded from identifying the source of the disputed asset "with sufficient reliability to rebut the statutory presumption that both spouses have contributed equally to the disputed asset." *Id.* at 138. That is not the situation here, and wife is not so contending. A second type of commingling occurs when a spouse has so integrated a separately acquired asset into the joint finances of the marital partnership that it would be inequitable to award the asset to that spouse as separate property under a just and proper distribution of marital property. *Id.* It is in this sense that wife asserts that husband has commingled the assets of the inheritance/trust.

█ █ In making the determination whether assets have been integrated to the extent that it would be inequitable to award them as separate property, we focus on whether the spouse with the separate property has "demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate." *Id.* at 142. The court said in *Kunze* that a spouse has treated a separately acquired asset as a joint asset of the marital partnership when the parties' shared financial decisions during the marriage have been made in reliance on that asset without consideration of whether it was separately or jointly acquired. *Id.* at 140; *see also Lind and Lind*, 207 Or App 56, 67, 139 P3d 1032 (2006) ("Intent * * * depends not on what a spouse might privately contemplate or even publicly declare; it depends on how a spouse acts, that is, on what the spouse's 'treatment' of the asset 'demonstrate[s].' "). Factors relevant to the determination of intent include: "(1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over the disputed

property; and (3) the degree of reliance on the disputed property as a joint asset." *Kunze*, 337 Or at 141-42.

We note, however, that a determination that there has been commingling does not necessarily require the sharing of an entire asset. Commingling may justify a division of a portion of a separately acquired asset. *Olson*, 218 Or App at 13. As we said in *Tsukamaki and Tsukamaki*, 199 Or App 577, 586, 112 P3d 416 (2005),

> "[b]ecause it is an equitable consideration, commingling is not an all or nothing proposition. Instead, commingling falls along a spectrum. In some cases, a particular asset may be commingled to such an extent that it would be inequitable to divide it in any manner other than equally. In other cases, an asset may be less commingled and therefore subject to a split into unequal shares. *See, e.g., Taylor and Taylor*, 121 Or App 635, 640, 856 P2d 325, *adh'd to as modified on recons*, 124 Or App 581, 863 P2d 473 (1993), *rev den*, 319 Or 626 (1994) (awarding wife one third of husband's inheritance because it was commingled through wife's reliance on it as a source of retirement income)."

As noted, wife contends that, as a result of husband's integration of his inherited assets into the common financial affairs of the marital partnership, it is just and proper that the entire inheritance be divided equally. The trial court disagreed, finding that there was no commingling of the inherited property, because of husband's separate ownership and control of the property. It is true that, with the exception of wife's monthly allowance, husband maintained separate ownership and control of the inheritance/trust property. He made the decisions regarding how to invest his inheritance, and he managed all funds and assets. He expressed the intention to keep the inherited property separate. He managed the farm with little or no input from wife. There was no intention expressed by husband to convert his entire inheritance into joint property. In fact, husband expressed the opposite intention. Those factors weigh strongly against dividing the inheritance/trust assets.

Nonetheless, there are aspects of commingling. As we said in *Lind*, in determining a spouse's intent, we look at how a spouse acts, that is, on what the spouse's treatment of

the asset demonstrates. 207 Or App at 67. Here, husband used inheritance/trust funds for family purposes. In fact, he relied on trust funds exclusively as the source of the family's support. Husband used inheritance/trust funds—both principal and income—to purchase and develop the family residence, and he testified that he purchased the property in Oregon to give his family a healthy environment and better lifestyle. He chose not to work in the carpentry trade for remuneration; rather, he invested his time and labor, as well as his separately held assets, in the family home and farm. The parties lived entirely off the inheritance and the income that it generated, supplemented as necessary by withdrawals of principal.

It is true, as husband argues, that the fact that a party uses funds from a separately held account does not convert the entire account into a marital asset, in the absence of evidence of an intention to treat the entire account as joint property. *Gano-Ridge and Ridge*, 211 Or App 393, 403, 155 P3d 84, *adh'd to as modified on recons*, 213 Or App 235, 159 P3d 1292 (2007); *see also Winkler and Winkler*, 200 Or App 524, 535, 115 P3d 948, *rev den*, 339 Or 475 (2005) (the husband's limited sharing of a separately held investment account for payment of household expenses did not make the account a marital asset in the absence of evidence that the husband intended the account to become a marital asset). Here, however, the inheritance and husband's investment of labor and skill in its management were husband's contribution to the marital partnership. Both wife and husband were completely dependent on the inheritance/trust funds throughout the latter part of their marriage. We conclude that husband's reliance on the inheritance property as his financial contribution to the marital partnership is a form of commingling. *See Olson*, 218 Or App at 12. The commingling of the inheritance/trust property for the purchase and development of the Lomas Road property and as the sole financial resource for the family weighs in favor of allocating some portion of the original inheritance to wife.

A just and proper division of marital property concerns the equity of the property division in view of all the circumstances of the parties. *Kunze*, 337 Or at 135; *Gano-Ridge and Ridge*, 211 Or App at 409. In addition to commingling,

other equitable considerations include the preservation of assets and the achievement of economic self-sufficiency for both spouses. *Kunze*, 337 Or at 136. We address first the achievement of economic self-sufficiency. Wife, who for 21 years was a homemaker and caregiver for the parties' children, has few means beyond minimum wage employment to provide for her own financial security. The Perrydale Avenue house will provide wife with security in her housing. The award of indefinite spousal support of $1,100, together with wife's minimum-wage employment, will provide her with monthly income of approximately $2,750, from which she must pay for all household and personal expenses (other than a mortgage), allowing for a modest standard of living not unlike that enjoyed by the parties during the marriage. The equalizing judgment of $176,487.50 will provide wife with some cushion, as well as with funds for retirement and, together with the award of spousal support and the Perrydale Avenue house, will allow wife to be self-sufficient.

As for the preservation of assets, husband testified that the acquisition of the Lomas Road property was a dream fulfilled, and that he has invested his resources, both financial and physical, in its development. Accordingly, it is appropriate that the property division allows husband to retain that property. The Perrydale Avenue property that the trial court awarded to wife free of encumbrance and the equalizing judgment are intended as wife's share of an equal division of the appreciation of the Lomas Road property, which, as noted, increased in value from $519,000 to $1,425,000 in the seven years that husband owned it—some $900,000 over that relatively brief period.

The record shows that the significant level of appreciation of that property is due in large part to husband's investment of substantial inheritance/trust funds into the property. The improvements that husband described were extensive and included clearing brush to create a view; planting trees and crops; adding a two-acre garden with a seven-foot fence; creating a volleyball court; a tetherball and a horseshoe pit; remodeling a daughter's bedroom; and adding a horse arena, a large pond, a shop, a yurt, an asphalt driveway, a stone entry with an electric gate, and a carved wooden entrance. All funds for those improvements came from the

trust. In that sense, the appreciation of the Lomas Road property itself represents a significant portion of the inheritance/trust property, and wife is awarded an equal share of that appreciation. Ultimately, there is no basis for concluding the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires; rather, its division was well within its discretion and, accordingly, we will not disturb that discretionary determination. *See Kunze*, 337 Or App at 136.

We affirm the other rulings of the trial court without further discussion.

On appeal, dissolution judgment modified to award wife indefinite spousal support of $1,100 and otherwise affirmed; affirmed on cross-appeal.